UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TERRY COOK,

    Petitioner,

vs.

DIANA BUTLER, Warden,

    Respondent.

No. C 02-2110 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it. Petitioner has responded with a traverse. The matter is submitted.

## BACKGROUND

**A.   Procedural History**

Petitioner was convicted by a jury of assault by means of force likely to produce great bodily injury, *see* Cal. Penal Code § 245(a)(1), and battery with serious injury, *see* Cal. Penal Code, § 243(d). He was sentenced to six years in prison. The conviction and sentence were affirmed by the California Court of Appeal and the California Supreme Court denied review.

**B.   Factual History**

Petitioner does not dispute the following facts, which are taken from the opinion of the California Court of Appeal:

> There were three eyewitnesses to the underlying altercation: defendant Cook, victim Smith, and Lucinda Freeman, who was working as the convenience store clerk that night. Ms.

Freeman testified that Smith was one of the regular customers she considered a friend. Cook, she testified, was an occasional customer she did not count among her friends. She testified that Cook never visited with her when he entered the store, but just did his business and left.

All three witnesses agreed that the altercation occurred on the evening of January 18, 1999, when Cook entered the convenience store to purchase gasoline and cigarettes while Smith was already inside, completing the purchase of a 12-pack of beer. On his way toward the door, Smith--who is over six feet tall–passed Cook, who is five feet eight inches tall, weighing 150 pounds.

Cook said something to Smith, but the witnesses did not agree on what it was. According to Smith and Ms. Freeman, respectively, Cook either called Smith a "piece of shit" or an "asshole." Smith testified that he responded in kind. Ms. Freeman testified that she could not hear Smith's response.

Cook, on the other hand, testified that his first words were merely, "Hi, John," to which Smith replied, "Fuck you, you piece of shit," with Cook rejoining, "Back at you." Cook said that Smith then seemed to head out of the store, but stopped in or near the doorway to say something back to him, which Cook was unable to understand. Cook testified that he then asked Smith whether he wanted to "take it outside." Smith and Ms. Freeman described this as a more affirmative proposal to "take it outside." Either way, all agreed that Smith assented. Cook testified that he then said, "Okay. I will be right out," and turned back toward Ms. Freeman at the counter.

Smith set down the beer he was carrying on an ice cream cooler. Then he approached the counter where Cook was still conducting his business. Smith testified that his intention was merely to remove his jacket, which he prized, in order to leave it near the clerk for safekeeping. He testified that while he was laying it on the floor at the end of the counter, "[T]he next thing I know I hear this, 'You stupid son of a---' and that's all I remember." He felt a blow to the left side of his face, in the cheek area. After that, he testified, he remembered essentially nothing until he found himself in a hospital two days later.

Cook testified that after the two men agreed to "take it outside," he turned back around to face the clerk and complete his transaction. He laid $20 on the counter and said he wanted to buy a pack of cigarettes and pay for $5 worth of gas. Someone then hit him in the back, "[j]ust above my hip on my right-hand side about my kidney." He turned to his right and saw Smith, who had apparently just laid down his jacket, "raise up" with "his fist coming at me." Cook, who is left-handed, hit Smith with his left hand, striking the cheekbone below the left eye. Smith "went . . . down on one leg, got up, and grabbed" Cook by the straps of his tank-top shirt. Cook put one hand on each of Smith's shoulders, spun him around, and "put him right down on the ground." Smith then

2

tried to knee Cook in the crotch. Cook "struck him a few more times [on] the right-hand side of the face." "He tried it again so I did it again." Altogether Cook struck Smith five times, all with his left hand. After four [*sic*] blows, he asked Smith, "Have you had enough?" Smith said, "Yes." Cook stood up, turned to face the clerk, and asked for his cigarettes and change. She said he hadn't paid. He protested, saying in effect that he was missing the $20. After looking on the floor he found his $20 lying underneath Cook. He placed it on the counter and received his change. He told the clerk she had better call the police and "the ambulance, too." He turned around and walked out. Asked why he didn't wait, he testified, "I didn't feel I did anything wrong."

Ms. Freeman testified that after Smith and Cook agreed to take their dispute outside, Smith set his beer on top of the cooler and took off his coat, which he brought up and laid next to the counter. She testified that Smith did not bump into or touch Cook. After laying down his coat, Smith turned around and headed towards the door. Cook followed and hit Smith in the back from behind. He grabbed Smith by the shoulder and spun him around. He seemed to hit Smith with his fist. Smith fell against a rack, then bounced off a plate glass window and went down on his back on the floor. Cook got on top of Smith, either straddling his chest or with one knee on his person and the other on the floor. Cook was slugging him in the head and face–mostly with his right hand, but the clerk thought "he got a few swings in with his left, too." Smith lay there moaning and trying to escape or push Cook off. Ms. Freeman described him as "moving his legs," with his knees going up and down, "trying to get Terry off." She testified that Cook hit Smith at least 20 times, that "there were a lot more than ten blows," and that she heard more than four blows struck. Cook stopped, got up, approached the counter, and said, "Give me my change." She gave him what she thought his change was. She testified that Cook ran out the door and "exited very quickly."

Ex. C at 1-4.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v.*

*Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

## DISCUSSION

Petitioner contends that because "his entire defense was that he acted in self-defense," his constitutional rights were violated by the court's refusal to allow him to present evidence relating to the victim's character and threatening statements made by the victim (Smith) prior to the fight. P. & A. in Support of Pet. at 22-23.

In ruling on this issue, the California Court of Appeal hinted that exclusion of the evidence probably was state law error, but declined to so hold, instead holding that any

4

error was not prejudicial. Ex. C at 10-12. In so holding the court declined to apply the standard for determining on direct review whether federal constitutional errors are harmless, saying that "the error, if any, is strictly one of state law." *Id.* at 10. This court interprets this as a rejection of the contention that there was federal constitutional error.

**I.     Standard**

"Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law." Washington v. Texas, 388 U.S. 14, 19 (1967). In *Chambers v. Mississippi*, 410 U.S. 284 (1973), the Supreme Court held that the defendant was denied a fair trial when the state's evidentiary rules prevented him from calling other witnesses who would have testified that the first witness made inculpatory statements on the night of the crime. And in *Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986), the Court similarly held that the defendant's right to have a fair opportunity to present a defense, whether rooted in the Fourteenth Amendment's Due Process Clause or in the Sixth Amendment's confrontation or compulsory process clauses, is violated by a trial court's exclusion of competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence. *See also Rock v. Arkansas*, 483 U.S. 44, 56-62 (1987) (holding unconstitutional Arkansas per se rule excluding all hypnotically enhanced testimony).

The Ninth Circuit has summarized the rule as "states may not impede a defendants's right to put on a defense by imposing mechanistic (*Chambers*) or arbitrary (*Washington* and *Rock*) rules of evidence." *LaGrand v. Stewart*, 133 F.3d 1253, 1266 (9th Cir. 1998). The rule is clearly established federal law under 28 U.S.C. § 2254(d) and a proper basis for federal habeas relief. *See, e.g., Greene v. Lambert*, 288 F.3d 1081, 1093 (9th Cir. 2002).

**II.    Analysis**

To prevail on his claim here, petitioner must show not only that the trial court error deprived him of his rights to present a defense, but also that the error had such "a

5

substantial and injurious effect or influence in determining the jury's verdict" as to require habeas relief. *See Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). In other words, state prisoners seeking federal habeas relief are not entitled to it unless the constitutional error resulted in "actual prejudice." *Id.* (citation omitted). The court will assume for purposes of this decision, that there was constitutional error, and proceed to consider whether it was prejudicial.

There were only three witnesses to the fight: Petitioner, victim Smith, and the store clerk, Freeman. The versions of what happened from petitioner and from Smith were nearly mirror images: Petitioner contended Smith sucker-punched him, whereas Smith contended that it was petitioner who sucker-punched *him*. The excluded evidence that Smith had made prior threats against petitioner might have some marginal relevance to the question of which version to believe, although the excluded evidence would not be all that probative – it would not go directly to whether Smith was inclined to unsportsmanlike attacks – but it pales into insignificance in the face of the testimony of the third eyewitness, Freeman, who supported Smith's version. Given the minimal value of the excluded evidence on the only real issue in the case, namely which of the two launched the sneak-attack, as compared to the testimony of the uninvolved eye-witness, exclusion of the evidence could not have had "a substantial and injurious effect or influence in determining the jury's verdict." The court concludes that exclusion of the evidence was not prejudicial, so the state appellate courts' rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court authority.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 17, 2007.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.02\COOK110.RUL.wpd

6